IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN K. MITCHELL, #K66722, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-cv-01236-JPG |
| ) | |
| REBA WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment filed by Nurse Reba Williams. (Doc. 45). For the reasons set forth below, the motion shall be **GRANTED** and this case **DISMISSED**.

### BACKGROUND

Plaintiff Brian Mitchell filed this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Pinckneyville Correctional Center ("Pinckneyville") when Nurse Reba Williams allegedly caused him to overdose on Epclusa, an antiviral drug prescribed for Hepatitis C. (Doc. 39, pp. 1-20). Instead of giving him a single tablet each day, the nurse provided him with four tablets for approximately five days between April 28, 2018 and May 3, 2018. (*Id.*). Mitchell claims that the drug overdose caused negative side effects that included headaches and tightness in his chest. (*Id.*). Following screening of the Second Amended Complaint under 28 U.S.C. § 1915A, the Court allowed Mitchell to proceed with a single Eighth Amendment deliberate indifference claim against Nurse Williams for causing him to overdose on Epclusa in April 2018. (Doc. 40).

1

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / REPLY

Nurse Williams filed a motion for summary judgment on the merits on June 25, 2021 (Docs. 45 and 46) and a Reply on December 1, 2021 (Doc. 70). Nurse Williams relies on Mitchell's deposition (Doc. 46-1), Nurse Williams' declaration (Doc. 46-2), and Mitchell's excerpted medical records (Doc. 46-3) to argue that she is entitled to summary judgment. Even if all genuine issues of material fact are construed in Mitchell's favor, Nurse Williams argues that he cannot present evidence that satisfies both elements of his Eighth Amendment claim against her. To do so, Mitchell must show that the nurse responded with deliberate indifference (subjective element) to his serious medical condition (objective element). (Doc. 46, p. 11) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). With regard to the subjective element, Nurse Williams states that she made a mistake when reviewing Mitchell's medical records for information about his prescription medication. However, this mistake did not rise to the level of deliberate indifference because she believed that she was complying with the prescription drug orders and immediately corrected the error when she learned she was wrong. As for the objective element, Nurse Williams maintains that Mitchell's reaction to the overdose was not sufficiently serious to support a constitutional claim in the short term or long term. (*Id.*). Therefore, Nurse Williams seeks dismissal of the claim against her. (*Id.*).

### PLAINTIFF'S RESPONSE

Mitchell filed a response in opposition to the motion on November 15, 2021. (Doc. 69). Relying on Nurse Williams' deposition (Doc. 69-1), Mitchell's prescription orders (Doc. 69-2), and Mitchell's affidavit (Doc. 69-3), Mitchell identifies factual disputes that he says are material and preclude summary judgment. Mitchell argues that Nurse Williams' decision to give him four times the daily dose of Epclusa for five days under threat of terminating his treatment for Hepatitis

C amounted to deliberate indifference.  Moreover, his headaches and chest tightness resulting from the overdose were sufficiently serious to support his claim against the nurse under the Eighth Amendment.  Mitchell asks the Court to deny the pending motion.  (*Id.*).

## FACTS

The following facts are offered by the parties in their summary judgment materials.  (*See* Docs. 46, 69, and 70).  To the extent they are disputed, the facts are presented in the light most favorable to the nonmoving party, Mitchell.

During his incarceration at Pinckneyville, Mitchell began a new medication regimen for Hepatitis C on April 27, 2018.  (Doc. 46, ¶ 5).  The regimen included a once-daily dose of Epclusa.[1]  (*Id.*; Doc. 69, p. 4 at ¶¶ 4-7; Doc. 69-1, pp. 14, 37-38).  Mitchell's prescription drug orders clearly stated that he should receive one tablet of Epclusa daily.  (*Id.*).  Less clearly, his medication administration record ("MAR") entry for April 27, 2018 indicated that he should receive Epclusa in the amount of "400mg/100mg '4.'"[2]  (*See* Doc. 46, ¶ 11).

On April 27, 2018, another nurse gave Mitchell his first dose in a single tablet during the morning "med line" held at 4:00 a.m.  (*Id.* at ¶ 6).  He had no issues with this first dose.

On April 28, 2018, Nurse Williams provided Mitchell with four tablets of Epclusa at morning med line over his objections.  (*Id.* at ¶ 7).  Mitchell informed the nurse that he should only take one tablet daily.  (*Id.* at ¶ 8).  Nurse Williams paused the med line for at least two minutes to check his medical chart for the correct dose.  (*Id.* at ¶¶ 9, 12).  During this time, she flipped through his medical chart, reviewed the MAR, and discussed the dosing with him.  (*Id.* at ¶ 12).  To Nurse Williams, the MAR confirmed that Mitchell was prescribed Epclusa in the amount of

---

[1] Epclusa is an antiviral medication used to treat Hepatitis C infection.  (Doc. 46, ¶ 5 n.1).
[2] Epclusa is a combination of two antiviral medications, including sofosbuvir (400 mg) and velpatasvir (100 mg).  *See* https://www.epclusa.com (site last visited Feb. 24, 2022).

400 milligrams per day and that each tablet was 100 milligrams. (*Id*. at ¶¶ 10-12). On this basis, Nurse Williams understood that Mitchell should receive four 100 milligram tablets of Epclusa daily. (*Id*.). She explained this to Mitchell. (*Id*. at ¶ 12).

She also gave him time to consider his options before taking the medication. (*Id*. at ¶ 13). Eventually, the nurse became impatient and even angry, and she yelled at Mitchell to "take the medication or don't and treatment would stop." (*Id*.). This echoed a prior warning by another nurse, Nurse Long, that Mitchell's treatment for Hepatitis C would end if he refused a single dose. (*Id*. at ¶ 14). After considering the matter, Mitchell took the four tablets and then ate breakfast. (*Id*. at ¶ 15). Shortly after doing so, he developed a headache while attempting to take a nap. (*Id*.). Following dinner that night, Mitchell went to sleep and awoke the next morning without a headache. (*Id*. at ¶¶ 16-17).

On April 29, 2018, Nurse Williams again dispensed four tablets over Mitchell's objections. (*Id*. at ¶ 18). Mitchell repeated that he was only supposed to take one tablet. (*Id*. at ¶ 19). Having already reviewed his medical chart the previous day, Nurse Williams told Mitchell that she would not discuss the matter further. (*Id*.). Mitchell took all four tablets, ate breakfast, and returned to his cell to nap. (*Id*. at ¶ 20). He awoke later the same day with a headache. (*Id*.). He also developed tightness in his chest. (*Id*.).

On May 3, 2018, Mitchell informed Nurse Tracy Peek that he was receiving four Epclusa tablets daily from Nurse Williams. (*Id*. at ¶ 30). According to Mitchell, Nurse Peek knew that he was only supposed to receive one tablet daily. (*Id*.). She immediately sent Mitchell with an escort to Pinckneyville's health care unit for further evaluation and treatment. (*Id*.). From that day forward, Mitchell received the correct dose of Epclusa. (*Id*. at ¶ 31). Nurse Williams dispensed medication to Mitchell on April 28, 29, 30 and May 2, 3, 4, and 5. (*Id*. at ¶ 29).

During the five-day period at issue, Mitchell reportedly developed a headache and tightness in his chest. (*Id*. at ¶ 26). However, his symptoms diminished over the course of each day. (*Id*. at ¶ 27). His medical complaints during the same time period include a single reference to a headache[3] that resolved before requiring any treatment on April 29, 2018 and May 7, 2018. (*Id*. at ¶¶ 20-21, 33). Mitchell's medical records show no reports or complaints about other short term side effects from the overdose during the relevant time period or long term side effects during the year that followed the overdose. (*Id*. at ¶¶ 32, 37).

## LEGAL STANDARD

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir 1994).

Once a properly supported motion for summary judgment is filed, the adverse party "must

---

[3] On May 7, 2018, four days after the overdose ended, Mitchell met with a licensed practical nurse. (Doc. 46, ¶ 33). He reported having a headache earlier that day but indicated that he now felt "fine" and had "no complaints." (*Id*.).

set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.  The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.  If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists.  *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

This matter involves a single claim of medical deliberate indifference arising under the Eighth Amendment.  A constitutional claim for the denial of medical care arises in this context when a prison official responds to an inmate's serious medical condition, viewed from an objective standpoint, with deliberate indifference, when viewed from a subjective standpoint.  *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).  If a reasonable jury could find that the evidence establishes the objective and subjective components of this claim, summary judgment must be denied.

**A.**     **Serious Medical Need**

A medical need is "serious" if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  A medical condition is also considered serious if it is life-threatening, poses a risk of serious impairment if left untreated, results in needless pain and suffering, or otherwise subjects a prisoner to a substantial risk of serious harm.  *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Together, Mitchell's underlying medical condition and prescription drug overdose are serious enough to support an Eighth Amendment claim at summary judgment.  He was diagnosed

with Hepatitis C and prescribed a 12-week treatment regimen that included Epclusa and other prescription medications during the relevant time period. (Docs. 46, 69, and 70). Standing alone, Hepatitis C that is diagnosed as requiring treatment could rise to the level of a serious medical condition. *Outlaw v. Ridley-Turner*, 54 Fed. Appx. 229 (7th Cir. 2002) (assuming without deciding Hepatitis C is objectively serious medical condition) (citing *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805 (7th Cir. 2000) (medical condition diagnosed by physician as needing treatment is objectively serious); *Moore v. Duffy*, 255 F.3d 543 (8th Cir. 2001) (conceding Hepatitis C is serious medical condition)). In this case, Mitchell also suffered from symptoms of a prescription drug overdose resulting from his treatment for Hepatitis C with Epclusa. Mitchell received four Epclusa tablets, instead of one, during a five-day period from April 28, 2018 to May 3, 2018. During the same time period, he suffered headaches that developed soon after taking the pills and subsided over the course of each day. He also developed tightness in his chest. A reasonable jury could find that Hepatitis C and related symptoms of a prescription drug overdose are sufficiently serious to satisfy the objective element of this Eighth Amendment claim.

**B.     Deliberate Indifference**

The question then becomes whether a reasonable jury could find that Nurse Williams acted with a sufficiently culpable state of mind when administering medication to Mitchell. In the Eighth Amendment context, the relevant state of mind is deliberate indifference. *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). The defendant "must have known that the plaintiff was at risk of being harmed and decided not to do anything to prevent that harm from occurring even though [s]he could have easily done so." *Id*. This standard is akin to intentional or criminal recklessness. *Id*. A treatment decision must be "so significant a departure from accepted professional standards or practices that it calls into question whether the [medical provider] actually was exercising h[er]

professional judgment" at all. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). A plaintiff must demonstrate that the treatment he received was "blatantly inappropriate." *Id*. at 409 (citing *Greeno v. Daley*, 414 F.3d at 654; *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Medical negligence, malpractice, and even gross negligence do not violate the Constitution. *Estelle v. Gamble*, 429 U.S. at 106; *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d at 591. In other words, some conduct falls below acceptable standards but still does not amount to a constitutional deprivation.

This is one such case where the nurse made an unfortunate mistake but did not act with deliberate indifference. When Mitchell advised the nurse that he should receive a single tablet of Epclusa, Nurse Williams halted the med line to determine the exact dose of his medication on April 28, 2018. Per the MAR entry dated April 27, 2018, Nurse Williams noted that Mitchell was prescribed Epclusa in the amount of "400mg/100mg '4.'" (*See* Doc. 46, ¶ 11). She interpreted this entry as a prescription for 400 milligrams of Epclusa per day to be dispensed in four 100 milligram tablets. She did not check this interpretation against the corresponding prescription drug order, which clearly indicated that Mitchell should only receive one tablet of Epclusa daily. Satisfied with her record review, she instead explained her reasoning to Mitchell and told him to take the medication or forego treatment for his Hepatitis C. When Mitchell objected the next day, the nurse did not review his medical records a second time because she recalled the entry from April 27, 2018.

As it turns out, the nurse's interpretation of the MAR entry was wrong. Epclusa is a combination of two antiviral medications, including sofosbuvir (400 mg) and velpatasvir (100 mg). This likely explains the entry for April 27, 2018: "400mg/100mg '4.'" (*Id*.).

Regardless, the facts reveal a misinterpretation or mistake on the part of the nurse, not deliberate indifference.

The nurse certainly could have taken other steps to confirm the proper dosing and administration of Mitchell's medication. She could have checked her interpretation of the MAR entry against the prescription drug order. She could have conferred with the nurse who administered the medication on April 27, 2018. She could have consulted other medical staff about the matter. While each of these additional steps represents a preferred or best practice, the Eighth Amendment does not demand such exacting standards of medical professionals in a prison setting. The standard is deliberate indifference, which is akin to intentional or criminal recklessness. No reasonable jury could find that Nurse Williams' conduct rose to this level. Accordingly, Defendant Williams is entitled to summary judgment.

## DISPOSITION

**IT IS HEREBY ORDERED** that Defendant Reba Williams' Motion for Summary Judgment (Doc. 45) is **GRANTED**. **COUNT 1** against **REBA WILLIAMS** is **DISMISSED** with prejudice.

Attorney Frank B. Garrett, III, who was assigned to represent Mitchell in this matter, is **TERMINATED** as *pro bono* counsel for the plaintiff, and the Court thanks Attorney Garrett for his time and attention to this matter.

If Mitchell wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues he plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Mitchell does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C.

§ 1915(e)(2). Moreover, if the appeal is found to be nonmeritorious, Mitchell may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: 2/28/2022**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**
